UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | Honorable Noel L. Hillman |
| v. | : | |
| | : | No. 18-162-NLH |
| | : | |
| JOSEPH BRODIE | : | |

**TRIAL MEMORANDUM OF THE UNITED STATES**

I.    INTRODUCTION

On September 19, 2017, Defendant Joseph Brodie threatened to assault and murder a

United States Congressman and members of that Congressman's staff.

Brodie ultimately was indicted on two counts of violating Title 18, United States Code,

Section 115(a)(1)(B) and (b)(4).    Following Brodie's indictment, the Court held several

hearings at which evidence and argument was presented by both parties, and the Court also

considered hundreds of pages of briefing.    The Court has now denied and/or dismissed all of

Brodie's pretrial motions, has held a Final Pretrial Conference, and has scheduled trial in this

matter for October 1, 2018.

In order to comply with the Court's deadlines, streamline the trial, and reduce the risks of

juror confusion and waste of resources, the United States hereby submits this trial

memorandum.[1]

---

[1]    The facts that the Government expects to prove at trial have been set forth in detail in the
Indictment, in the Government's responses to the defense pretrial motions, and in the
Government's representations during the pretrial hearings in this case.    Accordingly, the
Government will not now recount the provable facts in full, but will only discuss those facts

## II.   POTENTIAL LEGAL ISSUES

A.   Designation of Witnesses as Hostile and/or Identified With An Adverse Party

One of the witnesses that the Government intends to call at trial, Dana Mednick, is

"identified with an adverse party" under Federal Rule of Evidence 611(c).   Further, based on

Ms. Mednick's prior testimony during pretrial motions hearings and bail hearings, she is likely to

demonstrate hostility toward the Government at trial.   Accordingly, the Government seeks to

ask leading questions of Ms. Mednick at trial, and seeks to prevent defense counsel from asking

leading questions of Ms. Mednick at trial.

Rule 611(c) provides that, "[o]rdinarily, the court should allow leading questions …

when a party calls a hostile witness … or a witness identified with an adverse party."   Thus,

when a witness is hostile or is identified as having a relationship with an adverse party, the court

has discretion to permit the Government to ask leading questions on direct examination. See,

e.g., United States v. Hicks, 748 F.2d 854, 859 (4th Cir. 1984) (trial court did not abuse its

discretion in allowing Government to ask leading questions of defendant's girlfriend); see also

United States v. Centeno, 2014 WL 99578 at *4 (E.D. Pa. 2014), aff'd in part, vacated in part on

other grounds, remanded, 793 F.3d 378 (3d Cir. 2015) (finding no error in district court allowing

the Government to cross-examination its own witness because the witness was "hostile" – i.e., he

"was resistant and unwilling to respond directly to many questions during his direct

examination," and appeared only pursuant to subpoena, demonstrating his reluctance – and

because he "identified with the adverse party" – i.e., he was "friends" with one defendant and

"associated" with another, and accompanied the defendants at times during the narcotics

---

necessary for the Court's consideration of this trial memorandum.

scheme); <u>United States v. McLaughlin</u>, 1998 WL 966014 at *1 (E.D. Pa. 1998) (allowing Government to call, and cross-examine, defendant's accountant, who "clearly is 'identified with an adverse party'" in that he prepared the tax returns at issue, provided paid testimony at the prior trial, and, while not "in cahoots" with the defendant, "they were, at the very least, cohorts"); <u>Vanemmerik v. The Ground Round, Inc.</u>, 1998 WL 474106, at *1 (E.D. Pa. 1998) ("The normal sense of a person 'identified with an adverse party' has come to mean, in general, an employee, agent, friend, or relative of an adverse party.").

Whether a witness is hostile or identified with an adverse party involves a variety of factors, including the witness's relationship with a party, demeanor, facial expression, voice inflections, and whether the witness's answers are evasive.   <u>See</u>, <u>e.g.</u>, <u>United States v. Tunnell</u>, 667 F.2d 1182, 1188 (5th Cir. 1982) (trial court did not abuse its discretion in permitting prosecution to ask leading questions on direct examination of a witness whose videotaped deposition revealed hostility to the prosecution through his motions, facial expressions, and voice inflection); <u>United States v. Brown</u>, 603 F.2d 1022, 1025 (1st Cir. 1979) (witness was close friend of defendant); 28 Wright & Miller, Federal Prac. and Proc. § 6168(c) (2017) ("The witness's refusal to meet with the direct examiner before trial to prepare for testimony may be particularly important since the refusal suggests hostility and the inability to prepare reduces the likely impact of suggestive questions at trial.").   Moreover, where a witness may have been a participant – even an innocent participant – in some of the events that are related to the criminal activity, the trial court has discretion to permit the Government to ask leading questions as if on cross. See Brown, 603 F.2d at 1026.   Furthermore, a hostile witness can be one who feigns memory loss or is reluctant to divulge memory.   <u>United States v. Cisneros-Gutierrez</u>, 517 F.3d

3

751, 762 (5th Cir. 2008); <u>Brown</u>, 603 F.2d at 1026 (affirming district court's finding of hostility because, while "[t]he evidence strongly suggests that [he] was a participant in the crime," "[h]is testimony [was] replete with lapses of memory attributed to alcohol and drugs"); <u>cf. United States v. Salameh</u>, 152 F.3d 88, 128 (2d Cir. 1998) (court may allow leading questions on direct examination to develop nervous witness's testimony). Long ago, another district court in this circuit summarized the rationale:

> A witness should not have words put in his mouth. But neither should an attorney, confronted with an obviously recalcitrant witness, be confined to neutral questions.... Leading questions are prohibited in order to prevent a partisan witness from accepting suggestions from a friendly attorney.... When the witness is hostile, leading questions are as permissible as if the witness had been called by the other side.

<u>United States v. Barrow</u>, 229 F. Supp. 722, 728 (E.D. Pa. 1964) (citations omitted), <u>aff'd in part</u>, <u>rev'd in part on other grounds</u>, 363 F.2d 62 (3d Cir. 1966). More recently, another district court in this circuit explained as follows:

> The object of examination is to get the facts. Whether direct or cross questions best serve that end depends on the circumstances. The trial judge is in the best position to make such a determination. Toward that end, rule 611(c) gives the judge discretion to allow leading questions, on direct examination, of both hostile witnesses and witnesses identified with an adverse party. The term "witness identified with an adverse party" is intended to apply broadly to an identification based upon employment by the party or by virtue of a demonstrated connection to an opposing party.

<u>United States v. McLaughlin</u>, No. 95-CR-113, 1998 WL 966014, at *1 (E.D. Pa. Nov. 19, 1998). In cases such as this, with witnesses such as Ms. Mednick, the best way to "get the facts" is to allow the Government to ask leading questions of Ms. Mednick.

Here, Ms. Mednick has demonstrated her close affiliation with Brodie over the course of this case, both through in-court testimony as well as through other evidence, such as Ms.

Mednick's prior text and email communications with Brodie.    Indeed, Ms. Mednick is Brodie's

fiancée, and her current devotion to Brodie is so strong that she is now willing to twist the truth

in an effort to advocate for him.    As the Court recently observed:

> I am troubled by Ms. Mednick's gilding of the lily.    She transports herself into
> the cell and describes the conduct of the officers as if she were there, deriving all
> of that by a simple phone call, a statement, and a click of the phone.    That
> advocacy, assertion of facts that could not be within her personal knowledge, I
> think belies the credibility of her statement to me and demonstrates to me in part
> that this was in essence a fabrication by Ms. Mednick and Mr. Brodie at the 11th
> hour in order to defeat the introduction of this evidence.

August 27, 2018 Hr'g Tr. at 11.    These facts alone suggest that the Court should make a finding

that Ms. Mednick is identified with an adverse party and should rule that the Government may

ask leading questions of Ms. Mednick.

Alternatively, if the Court is not prepared to make such a ruling at this time, the

Government requests that the Court make the ruling as soon as Ms. Mednick exhibits the first

signs of hostility toward the Government at trial.    The Government anticipates that Ms.

Mednick's hostility may manifest itself at trial in a variety of forms, including a reluctance or

unwillingness to respond directly to questions, feigned forgetfulness, or an angry or surly

disposition, among others.    The Court already has witnessed Ms. Mednick's hostility to the

Government on a number of occasions, such as during Ms. Mednick's testimony over the course

of Brodie's pretrial motions hearings and bail hearing.    The Government submits that Ms.

Mednick's hostility also was evident during her testimony at a prior bail hearing that occurred on

February 25, 2018 before the Honorable Joel Schneider, United States Magistrate Judge.    If

hostility arises from Ms. Mednick – which is virtually certain under the circumstances – the

Government requests, pursuant to Federal Rule of Evidence 611(c), the Court make a finding

that Ms. Mednick is a hostile witness and should rule that the Government may ask leading

questions of Ms. Mednick.

The Court also has the discretion under the rule to limit the use of leading questions by

the defense when the Government calls a witness closely identified with the defendant.    Under

federal law, no one has an absolute right to ask leading questions on cross-examination.

Oberlin v. Marlin American Corp., 596 F.2d 1322, 1328 (7th Cir. 1979).    In this regard, the rule

reads, in relevant part, that "[o]rdinarily, the court should allow leading questions … on cross-

examination …"    Fed. R. Evid. 611(c).    The 1972 Advisory Committee Notes explained the

reason for the use of the qualifier, "ordinarily," stating:

> The purpose of the qualification "ordinarily" is to furnish a basis for denying the
> use of leading questions when the cross-examination is cross-examination in form
> only and not in fact, as for example the "cross-examination" of a party by his own
> counsel after being called by the opponent (savoring more of re-direct) or of an
> insured defendant who proves to be friendly to the plaintiff.

Illustrating the limits of the qualifier, the McLaughlin court precluded defense counsel from

asking leading questions of a witness affiliated with the defendant.    The court stated:

> Leading questions are permitted on cross-examination because the witness is
> often reluctant and resistant to respond directly.    This is due to not only the
> presumable bias of the witness for the opponent's cause, but also his sense of
> reluctance to become the instrument of his own discrediting.    Yet, where the
> reason ceases, the rule must also cease. Thus, when an opponent's witness proves
> to be biased in favor of the cross-examiner, the danger arises that leading
> questions will avoid the complete truth, and such questions may be forbidden,
> with the court treating the cross-examination as if it were on direct.
>
> Were I to allow defense counsel to lead this witness, it would tend to make the
> person under oath on the stand not the de facto witness; rather, those shoes would
> tend to be filled by the lawyer representing the person with whom the friendly
> witness is identified. The tendency would be to get the questioner's version of the
> "facts"—a version which might have more of a pro-client tilt, the lawyer being
> (quite properly) an advocate. It better serves the quest for truth to let the witness

testify unswayed by counsel's leading, whether that leading be of the patent put-words-in-mouth variety, or just mere, gentle nudging.

McLaughlin, 1998 WL 966014, at *2 (citing cases and treatises, with internal citations and quotation marks omitted).

As explained above, Ms. Mednick's renewed relationship with Brodie and her deep loyalty to Brodie have already caused her to attempt an "11th hour" "fabrication."   August 27, 2018 Hr'g Tr. at 11.   There can be no question that Ms. Mednick is affiliated with an adverse party, i.e., Brodie, and that she will display hostility to the Government at trial.   Accordingly, at trial, the Government will seek to ask leading questions of Ms. Mednick, and preclude the defense from asking leading questions of Ms. Mednick.

B.     Admission of Prior Grand Jury Testimony as Substantive Evidence

To the extent that Government witnesses who testified before the grand jury claim memory loss or equivocate during their trial testimony, the Government may move for admission of their prior grand jury testimony.    Again, the Government's belief is that due to Ms. Mednick's romantic relationship with Brodie, Ms. Mednick will claim memory loss, equivocate, or otherwise attempt to minimize or contradict her prior statements – including her testimony before the grand jury as well as her previously-recorded statement to law enforcement, which she later adopted as true during her grand jury testimony and again during her in-court testimony on February 26, 2018 before the Honorable Joel Schneider.   The Government therefore seeks to admit Ms. Mednick's grand jury testimony as substantive evidence, as well as her adopted statement.

Sworn prior inconsistent statements are admitted as substantive evidence under Rule 801(d)(1)(A) of the Federal Rules of Evidence if the declarant is available for cross-examination

in the current proceeding.   It is "well established" that poor recall of events, equivocation, and

claims of memory loss satisfy the requirement of "inconsistent" testimony under this rule.   See

United States v. Mayberry, 540 F.3d 506, 516 (6th Cir. 2008) (grand jury testimony available as

substantive evidence after witness claims memory loss); United States v. Mornan, 413 F.3d 372,

379 (3d Cir. 2005) (inconsistency under Rule 801(d)(1)(A) is not limited to diametrically

opposed statements).   See also United States v. Tran, 568 F.3d 1156, 1163 (9th Cir. 2009)

("portion of Nguyen's plea agreement that was admitted into evidence was inconsistent with

Nguyen's reluctant and evasive in-court testimony"); United States v. Woods, 613 F.2d 629,

636-37 (6th Cir. 1980) (admitting witness's prior inconsistent statement in testimony before a

grand jury as substantive evidence at trial).

Although the Third Circuit has noted that a prior statement should not be admitted if the

witness's current memory loss regarding that statement is genuine, United States v. Palumbo,

639 F.2d 123, 128 n.6 (3d Cir. 1981), it has held that a prior statement may be admitted under

Rule 801(d)(1)(A) where the witness's memory loss is not genuine, Mornan, 413 F.3d at 379.

See also United States v. Odom, 627 F. App'x 151, 153-54 (3d Cir. 2015) (not precedential)

(because witness's testimony that she had memory loss was likely viewed by the district court,

within its discretion, as disingenuous, admission of grand jury testimony as prior inconsistent

statement was not an abuse of discretion); United States v. Gerard, 507 F. App'x 218, 221-22 (3d

Cir. 2012) (not precedential) (witness's trial testimony that she could not remember many of the

events of the date in question "was a complete reversal of her sworn grand jury testimony, in

which she offered a detailed, first-person account"; "Because [witness's] trial testimony is

irreconcilable with her grand jury testimony, the District Court properly held that the

Government could read the relevant grand jury testimony into the record as a prior inconsistent statement under Rule 801(d)(1)(A).”); United States v. Iglesias, 535 F.3d 150, 159 (3d Cir. 2008) (“[W]here a witness demonstrates a 'manifest reluctance to testify' and 'forgets' certain facts at trial, this testimony can be inconsistent under Rule 801(d)(1)(A).”) (quotations in original); United States v. Bigham, 812 F.2d 943, 946-47 (5th Cir. 1987) (prior grand jury testimony is admissible where the witness “was obviously an evasive and reluctant witness, and the trial judge reasonably could have concluded that his loss of memory was feigned”); United States v. Williams, 737 F.2d 594, 608 (7th Cir. 1984) (in the context of a recalcitrant witness, lack of memory is inconsistent with detailed grand jury testimony); United States v. Thompson, 708 F.2d 1294, 1302 (8th Cir. 1983) (“The district court should have considerable discretion to determine whether evasive answers are inconsistent with statements previously given.”). Accord United States v. Owens, 484 U.S. 554, 565 (1988) (“It would seem strange … to assert that a witness can avoid introduction of testimony from a prior proceeding … by simply asserting lack of memory of the facts to which the prior testimony related.”).

The trial judge has broad discretion to determine if an evasive answer is inconsistent with the statements made in another proceeding.   This is so because the policy behind Rule 801(d)(1)(A) is to “provide a party with desirable protection against the turncoat witness who changes his story on the stand and deprives the party calling him of evidence essential to his case.”   Bigham, 812 F.2d at 946-47 (permitting the admission of grand jury testimony of a witness who feigned a memory loss); United States v. Murphy, 696 F.2d 282, 284 (4th Cir. 1982) (permitting admission of grand jury testimony of a witness who stated that he could not recall and was vague about what he stated to the grand jury except that he lied to the grand jury).

Thus, partial or vague recollection is deemed to be inconsistent with total or definite recollection. United States v. Distler, 671 F.2d 954, 958 (6th Cir. 1981); see also Williams, 737 F.2d at 608 (permitting admission of grand jury testimony where the witness claimed a partial memory loss in his testimony at trial); United States v. Marchand, 564 F.2d 983, 999 (2d Cir. 1977) (permitting the admission of grand jury testimony where the witness testified to facts before the grand jury and forgets or denies them at trial); United States v. Rogers, 549 F.2d 490, 495-96 (8th Cir. 1976).   Further, as noted in Argnellino v. New Jersey, 493 F.2d 714, 730 (3d Cir. 1974), "[a] complete answer to a question may be as inconsistent with a partial reply as one completely different in detail."   If the prior statement indicates that, at an earlier time, the witness remembered the events about which he testified with more certainty, or in more detail, then it is permissible to admit the prior statement of the witness who recalled the event incompletely or with some equivocation. Distler, 671 F.2d at 958.

In sum, a claimed inability to recall, when disbelieved by the trial judge, or a failure to testify about details previously provided, may be viewed as inconsistent with previous statements when the witness does not deny that the previous statements were made.   See Palumbo, 639 F.2d at 128 n.6; Rogers, 549 F.2d at 496.   All such statements are admissible under Rule 801(d)(1)(A).

Here, the Court can admit Ms. Mednick's prior statements as substantive evidence.   Ms. Mednick has repeatedly acknowledged that she made a tape-recorded statement to law enforcement shortly after Brodie's arrest, and she later adopted and expanded upon this statement when she was testifying before the grand jury.   See, e.g., July 26, 2018 Hr'g Tr. at 68. Since that time, the Court has observed firsthand how Ms. Mednick is able to testify in striking

10

detail about defense-favorable events that she Ms. Mednick now claims occurred last September, and she is able to "gild the lilly" with additional facts that she could not possibly have observed last September.   The Government submits that Ms. Mednick is very likely to "forget" facts at trial that she perceives to be unfavorable to Brodie, and to "remember" facts at trial that she perceives to be favorable to Brodie.   Under these circumstances, the Palumbo and Rogers threshold is met for Ms. Mednick's earlier statements to be admitted under Rule 801(d)(1)(A).[2]

C.   Rule 608(b) Precludes the Defendant from Attacking the Character of Government Witnesses in Matters Unrelated to Veracity

In the course of preparing for trial, the Government has learned that Brodie may attempt to pursue cross-examination that is designed to unfairly attack the character of one or more of the Government's trial witnesses in matters that are not related to veracity, and may otherwise attempt to introduce extrinsic evidence designed to accomplish those objectives.   For example, the various communications authored by Brodie – some of which the Government intends to introduce at trial – reflect that Brodie was upset with the Congressman, the President, and others for various medical, personal, political reasons, and he relished every opportunity to question these individuals about the quality of their Government service and of their character.

This trial necessarily will require evidence regarding the various reasons behind Brodie's anger at the Congressman and his staff, inasmuch as such evidence is necessary to prove that Brodie made his threats in an effort to "impede, intimidate, or interfere with [an]… official…

---

[2]   The Government is mindful that while the Court may admit testimony under penalty of perjury at a suppression hearing by a *non-defendant witness* such as Ms. Mednick, see United States v. Inglesias, 535 F.3d 150, 159 (3d Cir. 2008), the Court may not admit the prior testimony at a suppression hearing by a *defendant* for its truth, see Simmons v. United States, 390 U.S. 377, 394 (1968).

while engaged in the performance of official duties, or with intent to retaliate against such…

official… on account of the performance of official duties."   See 18 U.S.C. § 115(a)(1)(B).

The Government intends to call witnesses who will testify generally about how and why Brodie

initially reached out to the Congressman's Office, what issues Brodie wanted the Congressman's

Office to address, how Brodie behaved during his interactions with individuals at the

Congressman's Office, and the reasons that Brodie expressed about the reasons for his anger

toward the Congressman's Office.

This does not mean, however, that Brodie is given free reign to explore all the *underlying*

*merits* of the issues behind his anger.   For instance, Brodie should not be permitted to turn this

trial into a series of mini-trials regarding whether each of his particular medical appointments

actually were (or should have been) authorized and scheduled for him; whether the Congressman

actually lived up to his supposed promise to be, in Brodie's words, a "self-proclaimed advocate

for veterans"; whether Brodie actually "NEEDED A 48 HOUR EEG COMPLETED BEFORE

TOMORROW;" and whether the Veterans Administration and/or the Congressman's Office

actually "FAILED TO GET THAT [EEG medical test] DONE IN 90 DAYS" because the staff

"ARE INCOMPETENT AND LAZY RACISTS."

Quite simply, the fact of Brodie's *anger* about his medical care is relevant at trial, but the

actual *level* or *quality* of that care is not relevant.    And, the success of the Congressman's

efforts to assist Brodie with his care are only marginally relevant.    This is because even if

Brodie could show that he received unsatisfactory medical care from the Veterans

Administration and/or that the Congressman failed to live up to his promises, those showings

would not form a defense to the charged threats or otherwise bear on any issue at trial.    The

12

main reasons for Brodie to delve into the merits of these issues by cross-examining witnesses would be to launch gratuitous, ad hominem attacks against the witnesses, tarnish their reputations, harass them and scare them.   Brodie also may delve into these issues in order to confuse or distract the jury, and/or to elicit sympathy and achieve jury nullification.[3]   None of these reasons are proper reasons for questioning witnesses or presenting evidence. Accordingly, should Brodie seek to do this at trial, the Government will interpose appropriate objections and will ask the Court to preclude such efforts.

The weight of authority supports the Government's position.   Federal Rule of Evidence 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning his character for truthfulness or untruthfulness....

Meanwhile, Weinstein states: "Rule 608(b) is intended to be restrictive.... The rule does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness."   Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence

---

[3]     The Government will move to preclude the admission of evidence regarding Brodie's underlying medical issues; any underlying medical treatment that Brodie claims he did nor did not receive from the Veterans Administration; the underlying issues regarding medical care payments and travel cost payments; and any other defense evidence that is designed to confuse or distract from the issues at trial, waste judicial resources, or elicit sympathy from the jury in an effort to achieve jury nullification.

Based on the content and tone Brodie's pretrial motions briefing, as well as the arguments, testimony and other evidence that Brodie presented during pretrial motions hearings, the Government is concerned that Brodie will attempt to focus the jury's attention on the quality of medical care offered by the Veterans Administration and/or the various political positions taken by the Congressman, rather than on the crimes for which Brodie has been charged.   The Court should not allow this to happen.

§ 608.22[2][c] [i] (2d ed. 1997).    See also United States v. Davis, 183 F.3d 231, 257, amended,

197 F.3d 662 (3d Cir. 1999) (holding that cross-examination of witness on perpetration of a prior

assault was governed by Rule 608(b), not Rule 404(b), and was improper absent some

explanation why "it was probative of credibility rather than of a tendency to do bad acts").

Further, the Advisory Committee note to Rule 608(b) comments:

> Particular instances of conduct … may be inquired into on cross examination of
> the principal witness himself .... Effective cross examination demands that some
> allowance be made for going into matters of this kind, but the possibilities of
> abuse are substantial. Consequently safeguards are erected in the form of specific
> requirements that the instances inquired into be probative of truthfulness or its
> opposite .... Also, the overriding protection of Rule 403 requires that probative
> value not be outweighed by danger of unfair prejudice, confusion of issues, or
> misleading the jury ....

"[I]t is evident that the type of inquiry into specific conduct of the witness for impeachment

purposes is quite limited."    United States v. Bocra, 623 F.2d, 281, 288 (3d Cir. 1980).    "The

classic example of a permissible inquiry would be an incident in which the witness had lied."

Id.    Further, while the Sixth Amendment guarantees a defendant the right to cross-examine

witnesses, it allows a trial judge to place reasonable limits on the cross-examination.    United

States v. Mussare, 405 F.3d 161, 169 (3d Cir. 2005) (a district court retains "'wide latitude

insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross

examination based on concerns about, among other things, harassment, prejudice, confusion of

the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'")

(quoting Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986)).    "The court balances a

question's relevance to honesty and veracity with its prejudicial impact."    United States v.

Dennis, 625 F.2d 782, 798 (8th Cir. 1980).

       In Bocra, the Third Circuit considered the defendant's claim that the defendant should be

permitted to cross-examine an IRS agent regarding the agent's involvement in other bribery cases in order to attempt to show that the agent was a solicitor of bribes.   The defendant claimed that he was entrapped by the agent, and needed to introduce evidence of the IRS agent's involvement in other bribery cases to show a pattern of solicitation by the agent, which would cast doubt on the defendant's predisposition to commit bribery.   Id. at 285. The district court banned any such cross-examination because it determined that the marginal probative value of the testimony was outweighed by the risks of jury confusion.   Id. at 287-88.   On appeal, the Third Circuit determined that any cross-examination of the agent with respect to his involvement with other taxpayer bribes was "only marginally probative of truthfulness" and that the "probative value of the cross-examination was outweighed by the risk of confusing the jury by collateral exploration."   Id. at 288.

In United States v. Williams, 464 F.3d 443 (3d Cir. 2006), a narcotics and firearms prosecution, the Third Circuit found that the district court did not abuse its discretion in barring cross-examination regarding testimony by the Government's central witness that he had never committed murder.   Defense counsel argued that he had information that this assertion was false.   Id. at 448. Specifically, a confidential informant had told a federal agent "that the informant had heard from another person that [the central witness] had once stabbed an individual to death in Philadelphia."   Id.   However, the agent found no record of the murder, nor could he find the person who provided this information to the confidential informant.   Id. Based on the statement of the confidential informant, defense counsel wished to impeach the central witness on cross-examination.   Id.   The District Court denied the defense request under Federal Rules of Evidence 608(b) and 403.   Id.   The Third Circuit affirmed and noted that,

even if the evidence of the murder was strong, "it was not clearly relevant to [the central witness's] truthfulness as a witness and had a strong potential to prejudice the jury."   Id.

As in Bocra and Williams, Brodie should not be permitted to unfairly attack the character of witnesses at trial in matters that are unrelated to veracity, and may not present extrinsic evidence unrelated to veracity that is designed to attempt to attack the character of the witness. Other courts have quite properly limited or excluded altogether improper cross-examinations of witnesses designed to confuse the jury and cause unfair prejudice.   See, e.g., United States v. Nelson, 39 F.3d 705, 709 (7th Cir. 1994) (district court properly excluded cross-examination concerning other robberies that were supposedly committed by two Government witnesses); Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp., 37 F.3d 1460, 1464-65 (11th Cir. 1994) ("Anton's borrowing from his clients, while ethically questionable, is likewise irrelevant to his truthfulness as an expert.   To infer untruthfulness from any unethical act paves the way to the exception which will swallow the Rule.") (internal citation and quotations omitted); United States v. Townsend, 31 F.3d 262, 267-69 (5th Cir. 1994) (district court properly restricted defendant's cross-examination of various Government witnesses regarding falsification of corporate records and bad business practices, finding that it "would only serve to mislead and confuse the jury, and prolong the trial"); Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d 835, 839 (10th Cir. 1988) (probative value of evidence showing that one of defendant's agents embezzled $40,000 in connection with plaintiff's lease was greatly outweighed by risk of unfair prejudice); United States v. Dennis, 625 F.2d 782, 798 (8th Cir. 1980) (proper to exclude defendant from cross-examining victim-witness on prior arrest for tax problems because not related to veracity); United States v. Hill, 550 F. Supp. 983, 989 (E.D. Pa. 1982) (in prosecution

for distributing heroin, it was proper to refuse to allow inquiry into charges of misconduct against DEA agent who directed investigation where challenged conduct was unrelated to investigation, agent was cleared of wrongdoing, and nature of charges was not related to agent's character for veracity).

"Trials are about charges in the indictment, not the character of the witnesses.   Thus, although Federal Rule of Evidence 608(a) permits a party to introduce evidence regarding a witness's reputation for truthfulness, Rule 608(b) does not permit specific instances of a witness's conduct to be proved by extrinsic evidence."   United States v. Miller, 91 F.3d 1160, 1163 (8th Cir. 1996) (internal quotations and citations omitted).   See also United States v. McNeill, 887 F.2d 448, 453 (3d Cir. 1989) ("This court has construed Rule 608(b) as requiring the exclusion of extrinsic impeachment evidence concerning a witness' prior instances of conduct.").[4]

Accordingly, Brodie should not be permitted to attack the character of the Government's witnesses on matters that are not related to veracity.

D.     Prohibition of Using of Law Enforcement Reports to Cross-Examine Witnesses

The Government has provided Brodie with reports of witness interviews by law enforcement officers and Government agents.   To the extent that the officers and agents who

---

[4]     Moreover, Federal Rule of Evidence 611(a)(3) prohibits the harassment and undue embarrassment of witnesses.   See also McCormick, Evidence § 41 (7th ed. 2013) ("Some of the factors that should inform the exercise of the discretion [under Rule 608(b)] are: (1) whether the witness's testimony is crucial or unimportant, (2) the relevancy of the act of misconduct to truthfulness, (3) the nearness or remoteness of the misconduct to the time of trial, (4) whether the matter inquired into is likely to lead to time-consuming, distracting explanations on cross-examination or re-examination, and (5) whether there will be unfair humiliation of the witness and undue prejudice to the party who called the witness.").

prepared the reports testify, those reports, if materially inconsistent, provide an appropriate basis for impeachment of the agents.    However, under the Federal Rules of Evidence, those reports may not be used to impeach the subject of the underlying interview unless the subject has somehow adopted those reports.    United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992).

In Almonte, a DEA agent testified at trial about the post-arrest statements that he had obtained from two defendants.    Id. at 28. One defendant sought to cross-examine the agent with interview notes taken by an Assistant U.S. Attorney who had interviewed the agent.    Id. at 28-29.    The district court rejected the effort and the Second Circuit affirmed, holding that the AUSA's notes were not the agent's statement, but merely a "third party's characterization" of the agent's statement, and therefore irrelevant to impeachment and consequently inadmissible:

> We have held, however, that a "third party's characterization" of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization.... Thus, in the absence of endorsement by the witness, a third party's notes of a witness's statement may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words. The problem, in essence, is one of relevancy. If a third party's notes reflect only that note taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible.

Id. at 29 (citation omitted).    As a matter of evidence, the burden "of proving that notes reflect the witness's own words rather than the note taker's characterization falls on the party seeking to introduce the notes."    Id.    Thus, a party seeking to use a report to impeach bears the burden of proving a rational basis for concluding that the report either was adopted by the witness or represents the verbatim transcript of the witness's statement.    See id. at 30.    In the absence of such proof, cross-examination from such reports or notes should not be permitted.    See also United States v. Barile, 286 F.3d 749, 757-58 (4th Cir. 2002); United States v. Adames, 56 F.3d

737, 744-45 (7th Cir. 1995); <u>United States v. Saget</u>, 991 F.2d 702, 710 (11th Cir. 1993).[5]

Accordingly, Brodie should not be permitted to cross-examine any witnesses with law

enforcement reports unless those witnesses have authored or adopted those reports.

E.    Recalling Case Agents to the Witness Stand

During the course of trial, and considering the likelihood that Ms. Mednick will behave

as a hostile witness toward the Government and attempt to inject eleventh-hour or "red herring"

issues into the trial, the Government may seek to recall a case agent to the witness stand in order

to present a clear and concise case to the jury.    As it is impossible to predict exactly how Ms.

Mednick will testify, it is impossible for the Government to know with certainty whether a case

agent will need to be re-called to correct, clarify, or otherwise address Ms. Mednick's factual

narrative.    Accordingly, the Government requests permission to recall a case agent to the

witness stand should such an action become necessary.

The practice of recalling case agents to the witness stand has been endorsed by numerous

courts.    <u>See</u>, <u>e.g.</u>, <u>United States v. Edelin</u>, 128 F. Supp. 2d 23, 47 (D.D.C. 2001) (collecting

cases that have approved of the practice; noting that Federal Rule of Evidence 611(a) authorizes

the Court to control the order of interrogation and the presentation of evidence); <u>United States v.</u>

<u>Coleman</u>, 805 F.2d 474, 482 (3d Cir. 1986) ("The district court has discretion to allow the recall

of a witness, even if the witness has consulted with the prosecutor in the interim."); <u>United States</u>

<u>v. Butera</u>, 677 F.2d 1376, 1381 (11th Cir. 1982) (district court had discretion under Rule 611(a)

---

[5]    Given that the agent reports in this case were not adopted by the witnesses and are not
verbatim transcripts, they are not Jencks statements that should be produced under 18 U.S.C. §
3500. Nevertheless, the Government in this district has long acted as a matter of grace to produce
the reports pretrial to aid a defendant's preparation of the case. That does not change the fact that
the statements may not be used to impeach.

to permit case agent to take the stand on four separate occasions to describe events in chronological order); United States v. Jackson, 549 F.2d 517, 528 (8th Cir. 1977) (praising the district court's exercise of its discretion as lending "a praiseworthy degree of order to this complicated trial"); United States v. Rodgers, 2014 WL 3735585, at *2 (W.D. Pa. July 28, 2014) (permitting recall of certain law enforcement witnesses so the Government may present its evidence chronologically); United States v. Dimora, 843 F. Supp. 2d 799, 822-23 (N.D. Ohio 2012) (approving the recalling of a Government witness because it will provide a clear and orderly trial and aid the jury's understanding of the evidence); United States v. Bacon, 2012 WL 5381415, at *1 (W.D. Pa. Oct. 31, 2012) (permitting recall of police detective so the Government may present its evidence chronologically); United States v. Johnson, 434 F. Supp. 2d 301, 305-06 (D. Del. 2006) (recall of a DEA chemist was appropriate).   The Government submits that a similar procedure, if necessary, should be permitted here.

        F.      Sequestration of Witnesses During Trial

        Pursuant to Rule 615 of the Federal Rules of Evidence, the Government respectfully requests that witnesses be excluded from the courtroom, with the exception of Federal Bureau of Investigation case agents Joseph Furey and Patrick Muteteke.

        Both of these case agents are needed in the courtroom at trial.   Agent Furey conducted the initial investigation of the case as the lead case agent, but until recently it appeared to all parties that Agent Furey would need to retire from the FBI before the case could move to trial. Meanwhile, Agent Muteteke was a probationary agent until only recently, and he is in the process of assuming the position as lead case agent from Agent Furey in the event of Agent Furey's untimely retirement.

G.      The Indictment Should Go To The Jury

This Court has the discretion to allow the jury to receive a copy of the Indictment.    See,

e.g., United States v. Todaro, 448 F.2d 64, 66 (3d Cir. 1971); 3d Cir. Model Criminal Jury

Instruction 3.07, comment ("Trial Court Discretion to Allow Jury to Have Indictment During

Deliberations").    "Giving the jury a copy of the indictment appears to be common practice."

United States v. Roy, 473 F.3d 1232, 1237 n.2 (D.C. Cir. 2007) (citing Ralph A. Jacobs, White

Collar Pretrial Motions, 16 Litig., Jan. 1990, at 17, 20).    In a case such as this, with two

separate threat counts for the jury's consideration – both of which occurred on the same day and

involved substantially the same victims – the Indictment will assist the jurors in keeping the

charged threats straight in their minds as the jury conducts its deliberations.    The Government

submits that the jury would appreciate any help that can be provided during deliberations.

Accordingly, the Indictment will assist the jury in deciding the case, and the jury should receive

a copy of it.

H.      The Jury Should Be Allowed to Have the Transcripts During Deliberation

The United States seeks a ruling allowing the jurors to take the transcripts with them

during deliberations.    Transcripts routinely accompany other admitted exhibits to the jury room

in this district.      The Third Circuit has approved such use of transcripts by the jury during their

deliberations, so long as the jury properly is instructed that:    (1) the transcripts are not evidence;

(2) if there is any difference between the transcripts and their recollection of what the tapes said,

they should rely on their recollection; and (3) if they could not hear or understand certain parts of

the recordings, they should ignore the transcripts.    See United States v. Pecora, 798 F.2d 614,

631 (3d Cir. 1986); United States v. Adams, 759 F.2d 1099, 1115 (3d Cir. 1985); Comment,

21

Third Circuit Model Jury Instruction 4.06; <u>United States v. Morales</u>, 352 F.3d 1, 7 (1st Cir. 2003) (noting that it is the "common practice" in that Circuit and others to permit the jury to use such transcripts as aids, provided the jury is properly instructed); <u>see</u> <u>also</u> <u>United States v. Hoffecker</u>, 530 F.3d 137, 168-69 (3d Cir. 2008) (jury considered transcripts of all recordings during their deliberations); <u>United States v. O'Grady</u>, 280 Fed. Appx. 124, 131, 2008 WL 2139541, *5 (3d Cir. 2008) (unpublished) (finding no abuse of discretion in allowing the jury to use transcripts of recorded conversations as an aid during deliberations when there is "nothing in the record to indicate that the jury relied improperly on the transcript or that the transcript contained inaccuracies that would substantially affect defendant's rights in the event the jury had relied upon it.") (quoting <u>Pecora</u>, 798 F.2d at 631).   For instance, in <u>Adams</u>, the Third Circuit found that

> [t]he trial court clearly did not abuse its discretion in admitting the transcripts. The transcripts were a useful aid to the jurors.   Furthermore, the judge instructed the jury that the tape recording controlled over the transcript in case of error or ambiguity.   The transcripts thus were properly admitted into evidence.

<u>Adams</u>, 759 F.2d at 1115.   The <u>Pecora</u> Court likewise rejected a challenge by a defendant to the jury's use of a transcript in deliberations, concluding that there was no indication that "the jury relied improperly on the transcript or that the transcript contained inaccuracies that would substantially affect defendants' rights in the event the jury had relied upon it."   <u>Pecora</u>, 798 F.2d at 631 (citation omitted).

Therefore, the Government respectfully requests that jury have the transcripts to aid in their deliberations but that the Court instruct the jury regarding the proper use of the transcripts.

I.      Miscellaneous Issues

There may be other trial issues about which the Government anticipates seeking guidance

from the Court, but those issues are best raised in separate submissions, such as motions in limine, which are not yet ripe for filing.   The Government hereby provides notice of its intent to admit direct evidence, some of which may, alternatively, be construed as evidence under Federal Rule of Evidence 404(b), and notes that the facts and legal arguments related to this notice are contained in a separate submission that the Government is filing contemporaneously with this memorandum.

III.   <u>CONCLUSION</u>

The Government requests that the Court consider the above facts, arguments and governing authority in advance of trial in this case.

Respectfully submitted,

CRAIG CARPENITO
United States Attorney

***s/ Sara A. Aliabadi***
SARA A. ALIABADI
JASON M. RICHARDSON
Assistant U.S. Attorneys